Filed 8/18/23  In re A.G. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | B326339<br><br>(Los Angeles County Super. Ct. No. 21CCJP02652B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>S.G.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean Nelson, Judge.  Affirmed.

Eliot Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

S.G. (mother) appeals from a juvenile dependency court order terminating her parental rights.  Mother's sole contention is that the juvenile court erred in finding the Los Angeles County Department of Children and Family Services (DCFS) conducted an adequate inquiry to determine whether A.G. is or may be an Indian child within the meaning of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).  We affirm the juvenile court order.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the limited issue mother raises on appeal, we provide only a brief summary of the factual background.  In May 2021, DCFS received a referral alleging mother displayed a handgun while engaging in a physical altercation with another woman.  Mother's two children were present.[1]  Law enforcement subsequently found two firearms, methamphetamine, and drug paraphernalia in mother's home and within reach of the children.  DCFS filed a dependency petition based on the May 2021 incident.

In June 2021, DCFS detained seven-month-old A.G. and placed him in the home of maternal cousin A.O.  At an August 2021 hearing, mother submitted a parentage questionnaire

---

[1]    This appeal is limited to A.G. and does not concern his sibling.

declaring she believed M.S. was A.G.'s father. M.S. died in October 2020, shortly before A.G. was born. Mother declared in the questionnaire that M.S. was not present at A.G.'s birth, he did not sign the birth certificate, she and M.S. were not married at the time of A.G.'s conception and birth, she and M.S. were not living together at the time of A.G.'s conception and birth, and no parentage test had been done.

In the jurisdiction and disposition report, M.S.'s mother, Juana S., identified as the "paternal grandmother," told a social worker she met mother only after M.S. died. M.S. had told Juana S. that mother was pregnant, but Juana S. did not meet mother until after A.G. was born. Juana S. and her daughter had visits with A.G. for " 'a couple of hours,' " but not overnight. Juana S. believed M.S. was affiliating with gangs before he died, but she "didn't know of [his] whereabouts" and was unaware of his death for a time because no one contacted her.

At the October 2021 adjudication and disposition hearing, the juvenile court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[2] based on mother's possession of firearms and drugs in the home and within access of A.G. DCFS asked the court to make a parentage finding, explaining there was no basis to find M.S. was a presumed father. The court found M.S. was an alleged father. The court removed A.G. from mother.

At a January 2023 hearing pursuant to section 366.26, the juvenile court terminated parental rights. M.S. remained an alleged father. The court found the permanent plan of adoption

---

[2]      All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

was appropriate and identified A.G.'s caretaker, maternal cousin A.O., as the prospective adoptive parent. Mother filed a timely appeal from the termination of her parental rights.

***ICWA Background***

An ICWA-010 Indian Child Inquiry form indicating the social worker questioned mother about Indian ancestry was attached to the initial dependency petition. According to the form, mother's interview provided "no reason to believe the child is or may be an Indian child."

The June 2021 detention report stated that ICWA did not apply, citing mother's May 2021 denial of Indian ancestry. Mother was not present at the initial detention hearing. The juvenile court stated that it had no reason to know A.G. was an Indian child.

In July 2021, DCFS interviewed maternal cousin A.O., who denied Indian ancestry for herself and mother's family. According to the jurisdiction and disposition report, in late July 2021, mother again denied any "ICWA ancestry." DCFS also asked alleged father M.S.'s mother, Juana S., about Indian ancestry. She "denied any ICWA ancestry for [A.G.]." Mother appeared at the August 2021 jurisdiction and disposition hearing. She submitted an ICWA-020 Parental Notification of Indian Status Form, again indicating A.G. did not have Indian ancestry. The juvenile court found that it had no reason to know A.G. was an Indian child as defined by ICWA, and ordered mother to keep DCFS, her attorney, and the court informed of any new information as to Indian status.

In September 2022, DCFS interviewed A.O. a second time, and also interviewed A.O.'s mother, as to Indian ancestry. Both

4

stated the family did not have any "American Indian heritage to their knowledge."

At the January 2023 permanency planning hearing, the court found DCFS made a "reasonable and diligent inquiry" under ICWA and ICWA did not apply.

## DISCUSSION

Mother argues substantial evidence did not support the juvenile court's finding that ICWA did not apply because DCFS failed to interview other maternal and paternal relatives about possible Indian ancestry. We find no error and affirm the juvenile court's order.

## I.    Duty of Inquiry

Section 224.2 sets forth the duties of a county welfare department and the juvenile court in determining whether a child is or may be an Indian child. An " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)

Section 224.2, subdivision (a), provides that both the court and the Department have an "affirmative and continuing duty" to inquire whether a child is or may be an Indian child, beginning with the "initial contact," which includes asking the party reporting abuse or neglect if they have any information that the child may be an Indian child. Under section 224.2, subdivision (b), if a child is placed in the Department's temporary custody, the agency must inquire whether the child is or may be an Indian child, by asking a nonexclusive group that includes the child, the parents, and extended family members. An " 'extended family member' " is an adult who is the "Indian child's

grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent," or an individual as otherwise defined by an Indian child's tribe. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Section 224.2, subdivision (i)(2), provides that if "the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." "On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.)

## II. Substantial Evidence Supported the Juvenile Court's ICWA Finding

Mother contends section 224.2, subdivision (b), required DCFS to interview several paternal relatives and that maternal cousin A.O. and her mother, who were interviewed by DCFS, should have been asked to identify other maternal family members who could have been interviewed to determine whether A.G. is an Indian child. We find no error.

### A. ICWA does not apply to an alleged father

ICWA defines a "parent" as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established." (25 U.S.C.

§ 1903(9).)[3]  The federal statute does not define "acknowledged or established."  Due to the lack of a federal definition, "courts have resolved the issue under state law." (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708 (*Daniel M.*).)

Under California law, "[a]n alleged father is a man who may be the father of the child, but whose biological paternity has not been established" by one of the various methods set forth by statute. (*In re Jayden G.* (2023) 88 Cal.App.5th 301, 309; see Fam. Code, §§ 7571, subd. (a) [voluntary declaration of paternity], 7551 [blood testing], 7554, subd. (a) and 7555 [genetic testing], 7636 [court judgment], 7611, subds. (a)–(d) [marrying or attempting to marry mother; receiving child into the home and holding out as biological], 7554, subd. (a) [admission during court appearance accepted by court].)  "An alleged father may or may not have any biological connection to the child. . . .  [A]bsent a biological connection, the child cannot claim Indian heritage through the alleged father." (*In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 (*E.G.*).)  ICWA therefore does not apply to an alleged father. (*Ibid*; *Daniel M.*, *supra*, 110 Cal.App.4th at pp. 707–708.)

Here, when asked to make a paternity finding, the juvenile court found M.S. was only an alleged father.  Mother did not argue this finding was error in her opening brief, and we note the trial court's finding was supported by substantial evidence. (*In re H.R.* (2016) 245 Cal.App.4th 1277, 1284.)  Although mother indicated she believed M.S. was A.G.'s father, no parentage testing had been done, she and M.S. were not married at the time of A.G.'s conception and birth, she and M.S. were not living together at the time of A.G.'s conception and birth, M.S.'s name

---

[3]  Section 224.1, subdivision (c) adopts this federal definition.

7

was not on A.G.'s birth certificate, and M.S. had no opportunity to hold A.G. out as his child due to his death prior to A.G.'s birth. While M.S.'s mother said she was A.G.'s grandmother and had visits with him, she told DCFS she was aware of mother's pregnancy but had not met mother before M.S. died and A.G. was born, she had been unaware of M.S.'s whereabouts prior to his death, and she had very little information about mother. The juvenile court's finding that M.S. was an alleged father was a judicial determination that biological paternity was *not* acknowledged or established.

The *E.G.* court recognized that under ICWA, "[*u*]*ntil biological paternity is established*, an alleged father's claims of Indian heritage do not trigger" ICWA's requirements. (*E.G.*, *supra*, 170 Cal.App.4th at p. 1533, italics added.) Mother attempts to distinguish *E.G.* on the basis that it concerned ICWA notice, a different step of the process in determining whether ICWA applies. This distinction is immaterial for our purposes. The critical issue in *E.G.*, as here, was whether the provisions of ICWA apply when the child could only potentially be deemed an Indian child because of the connection to an alleged father. (*Ibid.*) As in *E.G.*, M.S.'s biological paternity was not established, thus he was not a "parent" within the meaning of ICWA, and the relationship between A.G. and M.S.'s relatives was undetermined. In the absence of a biological relationship between A.G. and M.S., M.S.'s relatives could offer no information as to whether A.G. is or may be an Indian child. (See *In re S.H.* (2022) 82 Cal.App.5th 166, 171 [until alleged father's biological paternity determined, any information he provided regarding possible Native American ancestry not relevant to proceedings regarding ICWA inquiry].)

Moreover, even if the juvenile court had an obligation under ICWA to ask M.S.'s family members whether A.G. is or may be an Indian child, we would conclude that the inquiry here was sufficient for the court to make an ICWA finding. An Indian child is one who is a member of an Indian tribe, or the biological child of a member of an Indian tribe, and who is eligible for membership. (25 U.S.C. § 1903(4); § 224.1, subd. (a).) The record reflects that DCFS questioned M.S.'s mother about the family's Indian ancestry. Juana S. lived with her husband, M.S.'s father, and their two adult sons. The record indicates Juana S. was a reliable source who would know if M.S. was a member of an Indian tribe, or whether A.G. is or may be an Indian child by virtue of the family's heritage or tribal membership. Juana S. denied the family had any Indian ancestry. Under these circumstances, the trial court could reasonably conclude that, to the extent any inquiry of M.S.'s family members was required, DCFS's inquiry was adequate. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1009 (*Ezequiel G.*) [focus of court's analysis is on whether the agency's inquiry has yielded reliable information about child's possible tribal affiliation, not on the number of individuals interviewed].)[4]

### B. Inquiry of mother and maternal relatives

Mother denied Indian ancestry twice. The record indicates the denial was reliable. Mother had extensive contact with

---

[4]     In *Ezequiel G.*, *supra*, 81 Cal.App.5th at pages 1005, 1008, a panel of this court concluded the juvenile court's determination of whether the agency has conducted a proper and adequate further inquiry and due diligence is subject to review for abuse of discretion. Using either a substantial evidence or abuse of discretion standard, we would find the trial court properly concluded DCFS satisfied its inquiry obligations in this case.

maternal relatives.  Starting in 2005, mother was raised by her mother and her grandmother.  Mother lived with the maternal grandmother until she passed away in January 2021.  The record does not indicate mother was raised without a connection to her biological family members.  There is no evidence her repeated denials of any Indian ancestry might not be "fully informed."  (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578 (*Dezi C.*); cf. *In re Y.W.* (2021) 70 Cal.App.5th 542, 548 [mother was adopted and had no information about biological relatives].)

DCFS also interviewed two maternal "extended family members," cousin A.O. and A.O.'s mother.  Cousin A.O. was asked about Indian ancestry both for herself and the entire family, and she denied it on two occasions.  A.O.'s mother also denied Indian ancestry for the family.  A.O. lived with several maternal relatives who were not interviewed about whether A.G. is or may be an Indian child.[5]  However, A.O.'s proximity to other

---

[5]  In her opening brief, mother contends DCFS's inquiry was inadequate because it did not ask A.O. or A.O.'s mother "for the identity and contact information of other relatives with possible knowledge of Native American ancestry."  Mother cites no legal authority for the proposition that an ICWA inquiry is inadequate if the agency interviews multiple available extended relatives, those relatives unequivocally deny the family has any Indian ancestry, but the agency does not document whether it asked those relatives to identify *other* family members who might have information about Indian ancestry the interviewed relatives do not believe exists.  Indeed, courts have held the agency is not required to " 'cast about' for investigative leads. [Citation.]" (*In re A.M.* (2020) 47 Cal.App.5th 303, 323.)  In her reply brief, however, mother appears to argue that DCFS's inquiry was

maternal relatives suggests that A.O. would be well positioned to provide information about the entire family. Any information that might render A.G. an Indian child through mother's family would presumably be shared knowledge of mother, maternal cousin A.O., A.O.'s mother, and the relatives A.O. interacted with in her household. Nothing in the record suggests the maternal relatives who were not interviewed would have information that mother, A.O., and A.O.'s mother did not provide. (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009; *In re Darian R.* (2022) 75 Cal.App.5th 502, 510 [parents and paternal aunt denied Indian ancestry; record did not support "unvarnished contention" additional interviews of maternal grandfather and aunt would have "meaningfully elucidated the children's Indian ancestry"].) Substantial evidence supports the juvenile court's finding that DCFS conducted a proper and adequate initial inquiry in this case. (*In re E.W.* (2023) 91 Cal.App.5th 314, 323 [substantial evidence supported initial inquiry finding where mother repeatedly denied Indian ancestry and agency interviewed maternal aunt and paternal grandmother but did not interview other available relatives].)

Moreover, even if the trial court erred in finding DCFS complied with its duty of inquiry without conducting interviews of additional relatives, we would find the error harmless. The record contains no information suggesting a reason to believe A.G. may be an " ' "Indian child" ' " within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the

---

inadequate because it failed to interview a maternal great-aunt, a maternal great-great-aunt, a maternal great-uncle, a maternal great-great-uncle, and two other maternal cousins, all of whom were known to the agency.

11

juvenile court's finding.  (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1014; *Dezi C.*, *supra*, 79 Cal.App.5th at p. 779.)  Nor does the record establish that an inquiry of additional relatives would have yielded any information likely to bear meaningfully on the court's ICWA determination.  (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)

Under these circumstances, we find any error in DCFS's failure to interview additional extended relatives is harmless and does not warrant reversal.

### DISPOSITION

The juvenile court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.